**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
**BUFFALO DIVISION**

---

ERIE COUNTY MEDICAL CENTER
CORPORATION, *et al.*,

       *Plaintiffs*,

   v.

TEVA PHARMACEUTICALS USA,
INC., *et al.*,

       *Defendants*.

Case No.: 1:21-cv-00826-WMS

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO REMAND

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 3

I.    THIS COURT SHOULD STAY THIS ACTION PENDING THE
FORTHCOMING TRANSFER DECISION. ...................................................... 3

II.   THIS COURT HAS FEDERAL-QUESTION JURISDICTION......................... 8

    A.   The Complaint "necessarily raises" a federal issue....................................... 9

    B.   The parties "actually dispute" the federal issue........................................... 14

    C.   The federal issue is "substantial".................................................................. 15

    D.   Resolving this case in federal court will not disrupt the federal-state balance............ 19

CONCLUSION.............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Admin. Subpoena Walgreen Co. v. U.S. DEA,*
913 F. Supp. 2d 243 (E.D. Va. 2012) ......................................................20

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.,*
850 F.3d 714 (5th Cir. 2017) ........................................................ passim

*Bellido-Sullivan v. Am. Int'l Grp., Inc.,*
123 F. Supp. 2d 161 (S.D.N.Y. 2000) ..........................................................6

*Broder v. Cablevision Sys. Corp.,*
418 F.3d 187 (2d Cir. 2005) ........................................................8, 16, 17

*Browne v. JUUL Labs, Inc.,*
2021 WL 2682255 (N.D.N.Y. June 30, 2021) ..........................................5

*Cardinal Health, Inc. v. Holder,*
846 F. Supp. 2d 203 (D.D.C. 2012) ........................................................20

*City of Amsterdam v. Purdue Pharma L.P.,*
2019 WL 5102564 (N.D.N.Y. Oct. 11, 2019) ..........................................4

*City of Chi. v. Int'l Coll. of Surgeons,*
522 U.S. 156 (1997) ........................................................................9

*City of Fairfax v. Mallinckrodt PLC,*
No. 1:20-cv-00218, Order (E.D. Va. Apr. 30, 2020) ..............................4, 7

*City of Orlando v. CVS Health Corp.,*
No. 6:20-cv-00736, Order (M.D. Fla. June 15, 2020) ............................5, 7

*City of Rochester v. Purdue Pharma L.P.,*
No. 6:19-cv-06490, Order (W.D.N.Y. Sept. 23, 2019) ..............................4

*Cty. of Alameda v. Purdue Pharma L.P.,*
No. 3:19-cv-02307, Order (N.D. Cal. June 10, 2019) ..............................7

*Cty. of Genesee v. McKinsey & Co., Inc.,*
2021 WL 2184943 (E.D.N.Y. May 28, 2021) ..........................................5

*Cty. of Jim Hogg v. Purdue Pharma L.P.*,
No. 4:19-cv-02816, Order (S.D. Tex. Sept. 4, 2019)..............................................4, 7

*Dallas Cty. Hosp. Dist. v. Amneal Pharm., LLC*,
2020 WL 429833 (S.D. Tex. Jan. 28, 2020) ......................................................4, 12

*DeLuca v. Tonawanda Coke Corp.*,
2011 WL 3799985 (W.D.N.Y. Aug. 26, 2011) .........................................................6

*Fracasse v. People's United Bank*,
747 F.3d 141 (2d Cir. 2014)....................................................................................17

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)........................................................................................ passim

*Gunn v. Minton*,
568 U.S. 251 (2013).....................................................................................8, 15, 19

*Herrick Co. v. SCS Commc'ns, Inc.*,
251 F.3d 315 (2d Cir. 2001)......................................................................................6

*In re Ivy*,
901 F.2d 7 (2d Cir. 1990) ..........................................................................................6

*In re Nat'l Prescription Opiate Litig.*,
290 F. Supp. 3d 1375 (J.P.M.L. 2017).....................................................................1

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-md-02804, ECF No. 899, 2018 WL 4019413 (N.D. Ohio Aug. 23,
2018) .......................................................................................................................14

*In re Nat'l Prescription Opiate Litig.*,
No. 2804, ECF No. 9188 (JPML July 29, 2021) .................................................1, 3

*Krieger v. Merck & Co.*,
2005 WL 2921640 (W.D.N.Y. Nov. 4, 2005) ..........................................................5

*Marion Hosp. Corp. v. Abbott Labs.*,
No. 1:20-cv-04111, Order (N.D. Ill. Aug. 25, 2020)................................................4

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)................................................................................................18

*Mick v. GlaxoSmithKline, PLC*,
    2008 WL 4147555 (W.D.N.Y. Sept. 2, 2008) ..........................................................5

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)....................................................................... passim

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*,
    824 F.3d 308 (2d Cir. 2016)................................................................2, 8, 17

*North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*,
    853 F.3d 140 (4th Cir. 2017) .....................................................................9

*North v. Merck & Co.*,
    2005 WL 2921638 (W.D.N.Y. Nov. 4, 2005) .........................................5

*Paintsville Hosp. Co., LLC v. Amneal Pharms., LLC*,
    2020 WL 7048275 (E.D. Ky. Dec. 1, 2020) ........................................4, 7

*PDK Labs. Inc. v. U.S. DEA*,
    362 F.3d 786 (D.C. Cir. 2004) ...............................................................20

*PNC Bank, N.A. v. PPL Elec. Utils. Corp.*,
    189 F. App'x 101 (3d Cir. 2006) ..............................................................9

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013)....................................................................6

*Ranck v. Mt. Hood Cable Reg. Comm'n*,
    2017 WL 1752954 (D. Or. May 2, 2017) ..............................................19

*Royal Park Invs. SA/NV v. Bank of Am. Corp.*,
    941 F. Supp. 2d 367 (S.D.N.Y. 2013)..................................................5, 6

*Safe Sts. All. v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) ...............................................................16

*Takoma Reg'l Hosp., Inc. v. Purdue Pharma, L.P.*,
    No. 2:19-cv-157, Order (E.D. Tenn. Oct. 4, 2019)...........................5, 6, 7

*United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props.*
    *Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994) ..................................6

*Winter v. Novartis Pharms. Corp.*,
    39 F. Supp. 3d 348 (E.D.N.Y. 2014) ......................................................6

*Wullschleger v. Royal Canin U.S.A., Inc.*,
   953 F.3d 519 (8th Cir. 2020) ........................................................................... passim

**STATUTES**

21 U.S.C. § 801, *et seq.*.................................................................................... passim

28 U.S.C. § 1331 ......................................................................................................9

28 U.S.C. § 1367 ......................................................................................................9

N.Y. Educ. Law § 6808 ..........................................................................................11

N.Y. Pub. Health Law § 3310 ................................................................................11

N.Y. Pub. Health Law § 3312 ................................................................................11

N.Y. Pub. Health Law § 3313 ...........................................................................11, 12

N.Y. Pub. Health Law § 3316 ...........................................................................11, 12

N.Y. Pub. Health Law § 3331 ................................................................................11

N.Y. Pub. Health Law § 3333 ................................................................................11

N.Y. Pub. Health Law § 3350 ................................................................................11

**OTHER AUTHORITIES AND DOCUMENTS**

21 C.F.R. § 1301.71 ...............................................................................................12

21 C.F.R. § 1301.74 ...............................................................................................10

H.R. Rep. No. 91-1444 (1970), as *reprinted in* 1970 U.S.C.C.A.N. 4566 ..............15, 17

N.Y. Comp. Codes R. & Regs. tit. 8, § 29.1 .........................................................11

N.Y. Comp. Codes R. & Regs. tit. 10, § 80.22 ......................................................11

N.Y. Comp. Codes R. & Regs. tit. 10, § 80.65 ......................................................11

N.Y. Comp. Codes R. & Regs. tit. 10, § 80.76 ......................................................11

N.Y. Comp. Codes R. & Regs. tit. 10, § 80.110 ...............................................11, 12

N.Y. Comp. Codes R. & Regs. tit. 10, § 910.2 ......................................................11

Defendants Walmart Inc. and Wal-Mart Stores East, LP (collectively, "Walmart") respectfully submit this memorandum of law in opposition to Plaintiffs' Emergency Motion to Remand and supporting memorandum ("Motion to Remand").  *See* ECF Nos. 7, 7-2.

## INTRODUCTION

This lawsuit is one of more than 3,000 opioid-related lawsuits filed throughout the country against manufacturers, distributors, and retailers of prescription opioid medications, among others. On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created the Opiate Multidistrict Litigation pending in the Northern District of Ohio, *In re Nat'l Prescription Opiate Litigation*, No. 1:17-md-02804 (N.D. Ohio) ("Opiate MDL"), for cases just like this one—cases in which plaintiffs allege that "distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).  Thousands of cases have since been transferred to the Opiate MDL.  This case is factually and legally indistinguishable from those cases.

On July 19, 2021, Walmart removed this action on federal-question grounds.  *See* ECF No. 1.  The JPML has already issued Conditional Transfer Order 201 ("CTO"), conditionally transferring this case to the Opiate MDL.  *See* ECF No. 25-1.  Following its normal procedure, the JPML temporarily stayed that order to allow Plaintiffs the opportunity to file an opposition.  *Id.* As with the thousands of cases before this one, at one of its upcoming hearings, the JPML will ultimately order the case transferred to the Opiate MDL.

Therefore, this Court need not decide Plaintiffs' Motion to Remand.  Instead, this Court should grant Walmart's Motion to Stay ("Stay Motion"), *see* ECF Nos. 23–24, and allow the JPML time to finalize its transfer decision.  Once transferred, the Opiate MDL will decide whether this case and all of the similar cases already pending before it should remain in federal court or be remanded.  That is the path followed by scores of judges across the country who have allowed

more than 170 cases removed on federal-question grounds (just like this one) to transfer to the Opiate MDL over plaintiffs' remand motions. *See* ECF No. 1-6. As more fully explained in Walmart's Stay Motion, ECF No. 24 at *2–4, and below, it is also the standard practice in this Circuit to defer ruling on jurisdictional issues that are already pending before an established MDL proceeding when a conditional transfer order is pending.

Should this Court decide to depart from the typical practice in this Circuit and those judges who have found a stay appropriate and reach Plaintiffs' Motion to Remand now, that motion should be denied. The federal aspect of this case is not, as Plaintiffs contend, some small element. Mot. to Remand at *16. The sole source of Supply Chain Defendants' alleged duties underpinning this case is the federal Controlled Substances Act ("CSA"), and *only* the federal CSA.[1] Plaintiffs' claims rise or fall on the paragraphs of their Complaint alleging violations of the CSA and related guidance from the federal Drug Enforcement Administration ("DEA"). *See, e.g.*, ECF No. 1-2 (hereinafter "Compl.") ¶¶ 769, 834, 885, 1005, 1270, 1274. As the Second Circuit has stated, "[a] state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016); *see also Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) ("Plaintiffs elected to premise these [state law] claims on violations and interpretations of federal law."). Therefore, a substantial federal question is necessarily raised, disputed, and should be resolved in federal court.

## BACKGROUND

Plaintiffs filed this action on May 11, 2021 in the Supreme Court of Erie County. Compl.

---

[1] Plaintiffs define "Supply Chain Defendants" to encompass Distributor Defendants and National Retail Pharmacies, including Walmart. ECF No. 1-2 ¶ 136.

at 5.   On July 19, 2021, Walmart timely removed this case to this Court asserting that federal-question jurisdiction existed under the CSA and its implementing regulations.   ECF No. 1.   On July 28, 2021, Plaintiffs filed a Motion to Remand.   *See* ECF No. 7.   On July 29, 2021, the JPML issued its CTO, determining that this action appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster."   CTO-201 at *1 (previously attached as ECF No. 25-1).   On August 4, 2021, Walmart filed the Stay Motion.   *See* ECF Nos. 23–24.

## ARGUMENT

## I.   THIS COURT SHOULD STAY THIS ACTION PENDING THE FORTHCOMING TRANSFER DECISION.

As an initial matter, and as set forth more fully in Walmart's Stay Motion, this Court should grant Walmart's Stay Motion and defer ruling on the Motion to Remand.   *See* ECF Nos. 23–24. The JPML has entered a CTO, finding that this case appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster."   CTO-201 at *1 (previously attached as ECF No. 25-1).   As it has done with thousands of cases, including numerous from New York,[2] the JPML will finalize that order and

---

[2] *See, e.g., City of Geneva v. Purdue Pharma, L.P.*, No. 6:19-cv-06186 (W.D.N.Y 2019); *City of Rochester v. Purdue Pharma L.P.*, No. 6:19-cv-06490 (W.D.N.Y. 2019); *City of Lackawanna v. Purdue Pharma, L.P.*, No. 1:19-cv-0485 (W.D.N.Y. 2019); *City of Ogdensburg v. Purdue Pharma L.P.*, No. 8:19-cv-00782 (N.D.N.Y. 2019); *City of Saratoga Springs v. Purdue Pharma L.P.*, No. 1:19-cv-00789 (N.D.N.Y. 2019); *City of Auburn v. Purdue Pharma L.P.*, No. 2:19-cv-03800 (E.D.N.Y. 2019); *City of Amsterdam v. Purdue Pharma L.P.,* No. 1:19-cv-896 (N.D.N.Y. Oct. 11, 2019); *Cty. of Albany v. Cardinal Health, Inc.*, No. 1:19-cv-00273 (N.D.N.Y 2019); *City of Rome v. Purdue Pharma, L.P.*, No. 6:19-cv-00376 (N.D.N.Y. 2019); *Baldwin Cty. v. Sackler*, No. 1:19-cv-02421 (S.D.N.Y. 2019); *City of Syracuse v. Purdue Pharma, L.P.*, No. 5:18-cv-01184 (N.D.N.Y. 2018); *Cty. of Onondaga v. Purdue Pharma, L.P.*, No. 5:18-cv-00100 (N.D.N.Y. 2018); *Cty. of Oneida v. Purdue Pharma, L.P.*, No. 6:18-cv-00314 (N.D.N.Y. 2018); *Vill. of Herkimer v. Purdue Pharma, L.P.*, No. 6:18-cv-00797 (N.D.N.Y. 2018); *City of Utica v. Purdue Pharma, L.P.*, No. 6:18-cv-01394 (N.D.N.Y. 2018); *Saint Regis Mohawk Tribe v. Purdue Pharma, L.P.*, No. 8:18-cv-01478 (N.D.N.Y. 2018); *Teamster Loc. 237 Retirees' Benefit Fund v. Purdue Pharma L.P.*, No. 1:18-cv-00336 (S.D.N.Y. 2018); *Klodzinski v. Purdue Pharma L.P.*, No.

transfer this case, likely after its next hearing in September.  *Id.*; ECF No. 24 at *9 & n.5.  This

procedural posture "weighs in favor of granting a stay."  *Paintsville Hosp. Co., LLC v. Amneal*

*Pharms., LLC*, 2020 WL 7048275, at *4 (E.D. Ky. Dec. 1, 2020).

Once transferred, the Opiate MDL will decide whether this case and all of the similar cases

already pending before it should remain in federal court or be remanded.  That is precisely the

purpose of multidistrict litigation—to conserve judicial resources and ensure consistency in

rulings—and it prevents defendants from being forced to litigate the same issues in multiple

courts.[3]  *See, e.g.*, *City of Rochester v. Purdue Pharma L.P.*, No. 6:19-cv-06490, Order (W.D.N.Y.

Sept. 23, 2019) (granting stay to "promote[] judicial economy and consistency and reduce[] the

net hardship experienced by both parties") (previously attached as ECF No. 25-2); *City of*

*Amsterdam v. Purdue Pharma L.P.*, 2019 WL 5102564, at *3 (N.D.N.Y. Oct. 11, 2019) ("[S]taying

_____

1:18-cv-03927 (S.D.N.Y. 2018); *Plumbers Loc. Union No. 1 Welfare Fund v. Purdue Pharma*
*L.P.*, No. 1:18-cv-04750 (S.D.N.Y. 2018); *Seneca Nation of Indians v. AmerisourceBergen Drug*
*Corp.*, No. 1:18-cv-00620 (W.D.N.Y. 2018); *A.M.H. v. Purdue Pharma L.P.*, No. 1:18-cv-01018
(W.D.N.Y. 2018); *Brodsky v. Purdue Pharma L.P.*, No. 2:18-cv-02788 (E.D.N.Y. 2018); *Cty. of*
*Albany v. Purdue Pharma, L.P.*, No. 1:18-cv-00024 (N.D.N.Y. 2018); *Laborers 17 Health Benefit*
*Fund v. Purdue Pharma, L.P.*, No. 1:17-cv-09877 (S.D.N.Y. 2017).

[3] *See, e.g.*, *Marion Hosp. Corp. v. Abbott Labs.*, No. 1:20-cv-04111, Order at *2 (N.D. Ill.
Aug. 25, 2020) (staying case in part because "Defendants represent—and Plaintiffs do not appear
to dispute—that several other cases in the MDL have presented similar or identical jurisdictional
issues") (previously attached as ECF No. 25-3); *City of Fairfax v. Mallinckrodt PLC*, No. 1:20-
cv-00218, Order at *4 (E.D. Va. Apr. 30, 2020) (granting motion for stay in part because "[j]udicial
review of threshold [jurisdictional] issues is a prime opportunity for judicial economy and
efficiency in a centralized MDL") (previously attached as ECF No. 25-5); *Dallas Cty. Hosp. Dist.*
*v. Amneal Pharm., LLC*, 2020 WL 429833, at *3 (S.D. Tex. Jan. 28, 2020) ("Granting a stay would
further judicial economy by avoiding duplicative litigation and preventing inconsistent rulings.  If
the JPML transfers this case to the Opiate MDL, Plaintiffs will have the opportunity to present
their motion to remand to Judge Polster, where it may be addressed along with other pending
motions to remand using a unified framework."); *Cty. of Jim Hogg v. Purdue Pharma L.P.*, No.
4:19-cv-02816, Order at *3 (S.D. Tex. Sept. 4, 2019) ("The pending motion to remand presents
factually and legally difficult issues.  Other cases consolidated before the MDL transferee court in
Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of
those issues, to improve judicial economy, and to reduce the risk of inconsistent results.")
(previously attached as ECF No. 25-12).

this action … promotes the efficient use of judicial resources and 'minimiz[es] the possibility of conflicts between different courts.'").

These same concerns hold true here.  In fact, more than 170 cases removed on federal-question grounds have been transferred to the Opiate MDL while remand motions were pending with the district court.  *See* ECF No. 1-6.  More than 80 of those cases were stayed pending transfer. *Id.*  For example, in *Takoma Regional Hospital, Inc.*, defendants removed the action, and plaintiffs sought remand.  Finding that the case was just "like so many other[] [opioid cases] around the nation," the court granted a stay and deferred a decision on the plaintiffs' motion to remand to allow Judge Polster to "issue a uniform ruling on the matter, minimizing the risk of inconsistency." *Takoma Reg'l Hosp., Inc. v. Purdue Pharma, L.P.*, No. 2:19-cv-157, Order at *1, *3 (E.D. Tenn. Oct. 4, 2019) (previously attached as ECF No. 25-6); *see also, e.g.*, *City of Orlando v. CVS Health Corp.*, No. 6:20-cv-00736, Order at *4 (M.D. Fla. June 15, 2020) ("Ruling on the Remand Motion now when the JPML may transfer the case to the Opiate MDL would risk inconsistent rulings and waste judicial resources.") (previously attached as ECF No. 25-4).

It is for precisely those reasons that the "Second Circuit Court of Appeals has adopted th[e] general rule" that courts should "defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case to the MDL panel."  *North v. Merck & Co.*, 2005 WL 2921638, at *1, *3 (W.D.N.Y. Nov. 4, 2005); *Mick v. GlaxoSmithKline, PLC*, 2008 WL 4147555, at *1, *3–7 (W.D.N.Y. Sept. 2, 2008) (same); *Krieger v. Merck & Co.*, 2005 WL 2921640, at *1, *3 (W.D.N.Y. Nov. 4, 2005) (same); *Browne v. JUUL Labs, Inc.*, 2021 WL 2682255, at *4 (N.D.N.Y. June 30, 2021) (same); *Cty. of Genesee v. McKinsey & Co., Inc.*, 2021 WL 2184943, at *1–2 (E.D.N.Y. May 28, 2021) (noting that "the Second Circuit has clarified [that] … the argument for deferring resolution [of a remand motion] to the eventual transferee court is strong"); *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370–74

(S.D.N.Y. 2013) ("[C]ourts in this Circuit have … deferred ruling on motions to remand in order to permit the MDL court selected by the JPML to decide such motions."); *see also In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (explaining that jurisdictional issues "involv[ing] common questions of law and fact" arising in recurring cases are "particularly well-suited" to be "resolved by a single court").

There is no basis to make this case the exception either against this Circuit's general practice or the predominate practice of district courts across the country. *Takoma Reg'l Hosp., Inc.*, Order at *1, *3 ("Staying this case, then, appears to be the default against which Plaintiffs operate.") (previously attached as ECF No. 25-6). Plaintiffs certainly offer none.

*First*, Plaintiffs cite Second Circuit case law for the general proposition that jurisdictional arguments must be considered "whenever they arise." *See* Mot. to Remand at *4–6. But none of those cases involved an MDL proceeding or a conditional transfer order, such as exist here. *See, e.g., Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315 (2d Cir. 2001) (not involving any transfer matters or issues before an MDL); *see also Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013) (same); *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994) (same); *DeLuca v. Tonawanda Coke Corp.*, 2011 WL 3799985 (W.D.N.Y. Aug. 26, 2011) (same); *Winter v. Novartis Pharms. Corp.*, 39 F. Supp. 3d 348 (E.D.N.Y. 2014) (same); *Bellido-Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161 (S.D.N.Y. 2000) (same). Plaintiffs entirely ignore this Circuit's uniform jurisprudence counseling in favor of stays in the actual circumstances presented.

*Second*, Plaintiffs incorrectly argue that a stay will cause them prejudice. Mot. to Remand at *2, *5. As an initial matter, Plaintiffs cannot (and do not) argue they will be prejudiced by a stay before this Court. The JPML has already started to act on this case and will finalize its

decision in a timely fashion.  *See, e.g., Cty. of Jim Hogg*, Order at *3 ("The potential prejudice to the County if a stay is granted is from delay.  That potential for prejudice is reduced by the relatively expeditious pace of the JPML's decisions on transfer.") (previously attached as ECF No. 25-12); *City of Orlando*, Order at *5 ("As to Plaintiff's prejudice, any delay from the stay would be minimal as transfer briefing closes [in the near future] and a decision is expected soon after.") (previously attached as ECF No. 25-4).

Instead, Plaintiffs' prejudice argument is in fact a complaint about Judge Polster's case-management procedures in the Opiate MDL.  Plaintiffs complain primarily that Judge Polster will not act quickly enough to address their Motion to Remand following transfer.  *See* Mot. to Remand at *2, *5.  But Judge Polster's case management is not before this Court, as numerous courts have recognized.  *See Cty. of Alameda v. Purdue Pharma L.P.*, No. 3:19-cv-02307, Order at *4–5 n.3 (N.D. Cal. June 10, 2019) ("[T]his Court is not the appropriate forum for second-guessing Judge Polster's case management.") (previously attached as ECF No. 25-8); *see also, e.g., Paintsville Hosp. Co.*, 2020 WL 7048275, at *4 ("To acknowledge such an argument as persuasive would call into question the usefulness of any MDL proceeding."); *City of Fairfax*, Order at *5 ("[B]oth parties will benefit from centralized litigation at this stage.") (previously attached as ECF No. 25-5); *Takoma Reg'l Hosp.*, Order at *3–4 ("[M]onths of delay in a case that would . . . probably take years to resolve is [not] likely to yield serious prejudice," but rather, is "simply the price of uniformity, which has long been—and for good reason—a central goal of the federal judiciary.") (previously attached as ECF No. 25-6).

A stay is warranted to best serve judicial efficiency and ensure consistent treatment of an action nearly identical to thousands of others.  *See Paintsville Hosp. Co.*, 2020 WL 7048275, at *4 ("Given the fact that thousands of similar cases have been transferred already, and the likelihood

of many more cases being in a similar procedural posture, the interests of judicial economy and the threat of inconsistent rulings outweigh[] any potential prejudice to the Plaintiffs.").   The overwhelming weight of recent authority supports staying cases to allow the Opiate MDL to decide jurisdictional issues in a common fashion.  *See* ECF No. 1-6.  That same result should hold here.

## II.   THIS COURT HAS FEDERAL-QUESTION JURISDICTION.

Although this Court need not reach the issue for the reasons explained, this Court plainly has federal-question jurisdiction.  "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005) (same).  The Second Circuit, as well as other courts around the country, has determined that these factors are satisfied in cases where state-law claims are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential (such as the CSA).  *See New York ex rel. Jacobson,* 824 F.3d at 315–18 (concluding state-law claims based on defendant's alleged violation of Internal Revenue Code satisfied *Grable*); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1022, 1031 (2d Cir. 2014) (concluding state-law claims premised on violations of "federal law duties" arising under the Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Broder v. Cablevision Sys. Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (concluding state-law claims premised on cable provider's alleged violations of federal Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction").[4]  Not only does Plaintiffs' action satisfy all four factors, but removal is especially

---

[4] *See also Wullschleger*, 953 F.3d at 522 (reversing remand order by district court where state-law claims involving Food & Drug Administration labeling were "premise[d] . . . on

proper because the action is indistinguishable from the more than 3,000 actions currently pending in the Opiate MDL.

### A.    The Complaint "necessarily raises" a federal issue.

Plaintiffs' state-law claims "necessarily raise" a federal question because the asserted right to relief under state law necessarily requires resolution of a federal question.[5]  *See NASDAQ OMX Grp., Inc.*, 770 F.3d at 1022–23 (stating that state law claims "necessarily raise multiple disputed issues of federal law" because the "the duty on which the[] claims turn" involve questions of federal law); *Wullschleger*, 953 F.3d at 522 (concluding that resolution of state-law claims "depend[ed] on federal law" where those claims could "not stand alone" from federal law); *see also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("[W]here the vindication of a right under state law necessarily turns on some construction of federal law, the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration and internal quotation marks omitted)); *Louisiana Flood*, 850 F.3d at 723 (concluding that federal question necessarily raised because plaintiffs' claims "cannot be resolved without a determination whether multiple federal statutes create a duty

---

violations and interpretations of federal law"); *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.* ("*Louisiana Flood*"), 850 F.3d 714, 722–23 (5th Cir. 2017) (concluding that a federal question was necessarily raised where claims relied on the court's interpretation of the scope of a duty of care contained in the Rivers and Harbors Act and the Clean Water Act); *see also PNC Bank, N.A. v. PPL Elec. Utils. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (concluding state-law claim based on alleged violation of the Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*).

[5] It is not necessary for federal jurisdiction that Walmart establish that all of Plaintiffs' claims raise a federal question.  Even if Plaintiffs could prove one or more of their claims without establishing a violation of federal law, this Court still has federal-question jurisdiction:  "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166 (1997); *see also* 28 U.S.C. § 1367(a).

of care that does not otherwise exist under state law"). Because the only possible source of Supply Chain Defendants' alleged duties is the federal CSA, the scope of which the parties will debate, federal law is necessarily raised, and the first *Grable* factor is satisfied.

Here, Plaintiffs' claims against Supply Chain Defendants necessarily raise federal issues because they are premised expressly on alleged violations of purported legal duties that arise out of the CSA and its implementing regulations—*i.e.*, the duties to monitor, report, and prevent suspicious shipments of otherwise lawful orders of controlled substances. *See, e.g.*, Compl. ¶¶ 769, 781, 834, 885, 911, 1005, 1018, 1270, 1274. Because the duties governing reporting and shipping "suspicious" opioid orders arise solely from the CSA and its implementing regulations, alleged violations of federal law form the basis of Plaintiffs' claims. *See, e.g.*, 21 U.S.C. § 823(b), (e) (identifying the question whether a distributor has maintained "effective control against diversion" as one factor the DEA may consider in evaluating whether the distributor should be licensed to operate); *id.* § 832 (imposing requirements to identify and report suspicious orders); *id.* § 842(c)(1)(B) (setting penalty for failure to comply with requirements related to suspicious orders or for failing to "maintain effective controls against diversion of opioids"); 21 C.F.R. § 1301.74(b) (requiring distributors of controlled substances to "design and operate a system" that identifies "suspicious orders of controlled substances" and to report such orders to the DEA).

For example, Plaintiffs allege that Supply Chain Defendants breached duties under federal law to "maintain effective controls, to investigate, report, and take steps to halt orders that they knew or should have known were suspicious," Compl. ¶ 769, to "control the supply, prevent diversion, and report and take steps to halt suspicious orders," *id.* ¶ 834, "effectively monitor for suspicious orders … report suspicious orders [and] stop or suspend shipments of suspicious orders," *id.* ¶ 1270(c) – (e), and to "operate a system to stop or at least to diligently respond to the

order[s] which were flagged or should have been flagged as suspicious," *id.* ¶ 1274.  These and other examples demonstrate that Plaintiffs' claims rest squarely on their allegations that Supply Chain Defendants breached duties arising out of the CSA and its attendant federal regulations.

Plaintiffs counter that "the Complaint here implicates numerous statutory and common law duties arising under state law."  Mot. to Remand at *13–15.  But they fail to connect those purported obligations to the duties relating to the distribution of opioids that they allege Supply Chain Defendants breached.  Many of the duties that Plaintiffs identify under New York law relate to the prescribing or dispensing of controlled substances, not distributing them.  Compl. ¶ 773 (citing N.Y. Pub. Health Law §§ 3331, 3350 (relating to prescribing and dispensing), N.Y. Comp. Codes R. & Regs. tit. 10, §§ 80.65, 80.76 (relating to prescribing and dispensing), N.Y. Comp. Codes R. & Regs. tit. 10, § 910.2 (concerning prescribing)); *id.* ¶ 1010 (citing N.Y. Pub. Health Law § 3333 (concerning dispensing)).  Others address the licensing or registration of parties in the controlled substance supply chain.  *See id.* ¶ 773 (citing N.Y. Educ. Law § 6808 (concerning registration), N.Y. Pub. Health Law § 3310 (addressing licensing)); *id.* ¶ 1271 (citing N.Y. Pub. Health Law § 3312 (relating to licensing)).  Still others concern the regulation of unprofessional conduct within various professions.  *See id.* ¶ 776 (citing N.Y. Comp. Codes R. & Regs. tit. 8, § 29.1).[6]

Even where Plaintiffs point to New York law generally regulating diversion and suspicious orders, no such law establishes a duty for Supply Chain Defendants to "stop or suspend shipments of suspicious orders."  *Id.* ¶ 1270(e); *see id.* ¶ 773 (citing N.Y. Comp. Codes R. & Regs. tit. 10, § 80.22, N.Y. Pub. Health Law §§ 3313, 3316); *id.* ¶ 1013 (citing N.Y. Comp. Codes R. & Regs.

_____

[6] Plaintiffs repeat citations to the aforementioned irrelevant New York law in paragraphs 775, 777, 1010–12, 1272–73, and 1282–83 of the Complaint.

tit. 10, § 80.110).  That is because, as Plaintiffs acknowledge, that duty arises solely from federal law.  *See id.* ¶ 781 & n.251 (citing only federal law in support of proposition that Supply Chain Defendants have a duty to "stop shipment on any order which is flagged as suspicious").  Further, to the extent that some New York law cited by Plaintiffs in support of their claims incorporates CSA provisions related to suspicious orders, N.Y. Pub. Health Law §§ 3313, 3316, N.Y. Comp. Codes R. & Regs. tit. 10, § 80.110, "[a]ddressing those claims will … involve addressing questions of federal law."  *Dallas Cty. Hosp. Dist.*, 2020 WL 429833, at *3  (noting that state law incorporating provisions of the CSA "does at least render difficult a determination whether [p]laintiffs' claims necessarily raise substantial questions of federal law").[7]

When there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," and the "duty would have to be drawn from federal law," a federal court has jurisdiction over that claim.  *Louisiana Flood*, 850 F.3d at 723; *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1021 (concluding that a state law claim premised on an alleged violation of a "federally prescribed duty … necessarily raises a … question of federal law"); *Wullschleger*, 953 F.3d at 522 (concluding federal-question jurisdiction exists where "plaintiffs' isolated focus on their alleged state law claims is nothing more than an apparent veil to avoid federal jurisdiction").  Accordingly, Plaintiffs here necessarily rely on violations of federal law for their claims.

---

[7] To the extent Plaintiffs purport to assert certain Pharmacy Defendants can be liable for the professional judgment exercised by pharmacists when filling opioid prescriptions, Plaintiffs once again cite only federal law:  "The National Retail Pharmacies … [must] 'provide effective controls and procedures to guard against theft and diversion of controlled substances.'"  Compl. ¶ 1010 (quoting 21 C.F.R. § 1301.71(a)).  None of the New York law cited in paragraphs 1010 through 1013 impose such duties identified in §1301.71(a).  Regardless, any allegations concerning such dispensing activities could only apply to a subset of the Supply Chain Defendants, most of whom do not own or operate pharmacies and do not dispense opioids.  Those Defendants are only named in their capacity as distributors, and Plaintiffs' claims against those Supply Chain Defendants rest entirely on the federal CSA.

Seeking to avoid the consequences of their own pleading, Plaintiffs assert that the "unanimous[] and repeated[]" decision of federal courts has been to remand opioid cases. Mot. to Remand at *2, *9–11. But that is not true. Far from "unanimous," as Walmart's Stay Motion makes clear, there are a far greater number of decisions granting stays pending transfer to the Opiate MDL. *See* ECF No. 1-6. Plaintiffs' contrary citations merely drive home the need for the uniformity that the Opiate MDL—and only the Opiate MDL—provides.

Plaintiffs also cite two opinions by Judge Polster that they purport govern these issues, but neither actually does. *First*, Judge Polster did sever and remand 2 individual counties from a case brought by 20 Missouri cities and counties. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 1987, Order (N.D. Ohio July 24, 2019) (previously attached as ECF No. 7-1 at 50). But he did so in response to an unusual request by a Missouri state court judge specifically regarding those cases and efforts in Missouri to create a coordinated case (which ultimately did not come to fruition). As Judge Polster reasoned, because the Missouri state court judge "felt strongly that for efficiency purposes [he] would like to be able to include the cases in the same geographic area which had been removed to the MDL" and because "[that judge] has represented that it will greatly assist his efforts if I were to sever the claims of these two counties (Jefferson and Franklin) and then remand those claims to him … the Court has decided to exercise its discretion to sever the claims of Jefferson County and Franklin County." *Id.* at *1, *3. In fact, there are still at least 19 cases removed on federal-question grounds from Missouri that were transferred to and are currently pending before the Opiate MDL, in addition to the other 18 cities and counties involved in the case Judge Polster severed and partially remanded. That includes 8 cases that were explicitly stayed pending transfer *after* Judge Polster's limited remand in July of 2019. ECF No. 1-6 (identifying cases from Missouri and noting which were stayed). *Second*,

Plaintiffs cite a remand Judge Polster ordered in a case brought by the State of Montana.  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 899, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018).  But they fail to mention that the case involved an entirely different federal statute as grounds for removal—regulations promulgated by the Food & Drug Administration.  *Id.* at *3.  It has no bearing here.

In fact, plaintiffs' practices in related opioid litigation make abundantly clear that these cases "necessarily raise" a federal question.  For example, plaintiffs in the Opiate MDL and the New York state cases have both offered analysis from James Rafalski, a former DEA investigator, in support of their state-law claims.  Tellingly, Mr. Rafalski's reports rely exclusively on analysis of federal law, federal regulations, and DEA guidance.  For example, Mr. Rafalski's New York report spends 30 pages analyzing the "applicable regulatory mechanisms," without citing to New York law a single time.  *See In re Opioid Litig.*, Index No. 400000/2017, NYCSEF Doc. No. 5214 at *12–41 (N.Y. Sup. Ct. Suffolk Cty. Mar. 4, 2020) (attached as **Exhibit 1**).[8]  Instead, Mr. Rafalski analyzes the federal CSA, its regulatory framework, and various DEA guidance and administrative actions.  *See id.*

Federal law permeates Plaintiffs' Complaint, and Plaintiffs make no effort to explain how this case may be "adjudicated without reliance on and explication of federal law."  *Wullschleger*, 953 F.3d at 522.  Plaintiffs' Complaint "necessarily raises" a federal question—the scope and meaning of Walmart's alleged duties under the federal CSA and its implementing regulations.

### B.   The parties "actually dispute" the federal issue.

The federal issues raised in Plaintiffs' Complaint are "actually disputed."  In particular, the

---

[8] All exhibits are attached to the August 12, 2021 Declaration of James W. Carlson filed herewith.

parties dispute the existence and scope of alleged duties arising under the CSA and whether Walmart violated any duties to monitor, detect, investigate, and report suspicious orders under the CSA. This federal issue is the "central point of dispute," *Gunn*, 568 U.S. at 259; the second *Grable* factor is met. Plaintiffs cannot avoid an actually disputed federal issue simply by not expressly pleading a federal claim—especially where, as here, the Complaint repeatedly alleges violations of obligations arising under federal law. Indeed, Plaintiffs do not meaningfully contend that the federal issue in this case is not "disputed." *See* Mot. to Remand at *13–17 (stating that this "*Gunn* element[]" is not "met" but offering no substantive argument in support).

### C.    The federal issue is "substantial."

The federal issue presented is substantial, because the federal government has a strong interest in a nationally uniform approach to controlled substances. *See Gunn*, 568 U.S. at 260. "The substantiality inquiry under *Grable* looks … to the importance of the issue to the federal system as a whole." *Id.* Contrary to Plaintiffs' assertions, *see* Mot. to Remand at *15–17, this factor is met because Congress recognized that the illegal uses of controlled substances "have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801(2), (6). Indeed, this is one of the primary reasons over 3,000 cases—raising nearly identical issues—are currently pending in the Opiate MDL.

In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a *unified* approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4572 (emphasis added). The scope of the obligations the CSA places on distributors of pharmaceuticals—*e.g.*, whether and to what extent it requires distributors to halt "suspicious" orders—is a legal question that has broad significance to the

federal government, including by affecting the DEA's ability to enforce the CSA and its methods for doing so.  The federal courts and the Opiate MDL court are best positioned to uniformly interpret these duties.  Just as the federal government had a direct interest in vindicating its own administrative actions to recover delinquent taxes in *Grable*, so too here does the federal government have a direct interest in administering the regulatory system Congress put in place with respect to opioid medications.

Moreover, the resolution of this legal issue will have application not only in this case, or even in the thousands of opioid-related actions pending in the MDL, but will apply broadly to all cases in which a plaintiff alleges that any distributor of pharmaceuticals breached its alleged duties to report or halt shipments of suspicious orders.  *See, e.g.*, *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 897 (10th Cir. 2017) (concluding plaintiffs' attempts to privately enforce the federal CSA to enjoin Colorado's marijuana law "raise, at minimum, 'substantial question[s] of federal law'" on the merits that were sufficient for the district court to have exercised jurisdiction over the preemption claims in their entirety under section 1331 (alteration in original) (citation omitted)).

Courts have often found federal issues to be sufficiently substantial when they raise "questions [that] involve aspects of … complex federal regulatory scheme[s] … as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" *Broder*, 418 F.3d at 195.  Such rulings are especially common where, as here, federal agencies are responsible for implementing a national regulatory system for which uniformity is essential.  In *NASDAQ OMX Group, Inc.*, for example, the Second Circuit ruled that "the disputed federal issue in th[e] case—whether [the defendant] violated its Exchange Act obligation to provide a fair and orderly market in conducting an IPO—is sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to 'the federal system

as a whole.'"  770 F.3d at 1024.  Likewise, in *New York ex rel. Jacobson*, the Second Circuit held that "minimizing uncertainty over the tax treatment of mortgage-backed securities, as Congress intended, fully 'justif[ied] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.'"  824 F.3d at 318.  And in *Louisiana Flood*, the Fifth Circuit determined that the plaintiffs' claims, alleging breaches of duties created by the Clean Water Act, the Rivers and Harbors Act, and the Coastal Zone Management Act, implicated the federal government's "extensive . . . permitting scheme" and "'issues of national concern'" and therefore raised substantial federal issues.  850 F.3d at 720–21, 723–24.[9]

Similarly, Plaintiffs' claims require a court to determine the existence and scope of Walmart's obligations under the CSA, implicating the uniformity concerns addressed above.  The CSA was enacted to "provid[e] the legitimate drug industry with a unified approach to narcotic and dangerous drug control."  H.R. Rep. No. 91-1444 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4572.  Plaintiffs' claims thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to 'the federal system as a whole,'"  *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1024 (citation omitted).  Resorting to a federal forum is particularly warranted here because Plaintiffs' action is but one of more than 3,000 substantially similar cases, the majority of which are pending in the Opiate MDL.  If this case proceeds in federal court and is transferred to the Opiate MDL, that court will ensure uniform construction and application of

---

[9] Plaintiffs' citation of *Fracasse v. People's United Bank*, 747 F.3d 141 (2d Cir. 2014) is inapposite.  Mot. to Remand at *16.  There, plaintiffs cited to federal law "[a]s examples of public policy considerations underlying their state law claims," which the Circuit found to be "tangential[]" and "insubstantial."  747 F.3d  at 142, 145.  Here, Plaintiffs' claims depend on the existence and scope of Supply Chain Defendants' duties under the CSA.

the CSA and any alleged duties arising under the CSA, thus achieving Congress's goal of a "unified approach" to regulating controlled substances.[10]

Additionally, allowing a state court to resolve state-law claims premised on purported violations of the CSA—and to determine the existence and scope of any alleged duties under the CSA—creates the potential for inconsistent interpretations of the CSA across jurisdictions. *See* 21 U.S.C. § 903 (stating that although Congress did not intend to "occupy the field" of controlled substances regulation with the CSA, the CSA preempts inconsistent state law). State courts issuing conflicting interpretations of the CSA would inevitably undermine the federal government's efforts to enforce the statute, and would also sow confusion among federally regulated entities.

None of Plaintiffs' responses hold water. Plaintiffs note that the CSA does not itself provide for a private right of action and suggest that under *Merrell Dow*, the absence of a private right of action should be dispositive. Mot. to Remand at *15; *see also Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986). Plaintiffs gloss over the Supreme Court's subsequent ruling in *Grable*, where it held that lack of a federal cause of action does not foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[] decades of precedent," and "convert[] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317. Other courts, including the Second Circuit, have similarly found a federal issue substantial even where there is no private right of action. *See, e.g., NASDAQ OMX Grp., Inc.*, 770 F.3d at 1018–19, 1024

---

[10] The federal government has made clear the effect that the opioid litigation will have on its ability to enforce the CSA. The Department of Justice filed a Statement of Interest on behalf of the United States in the MDL proceedings, asserting the federal government's interests in, among other things, its "law enforcement and legal activities in conjunction . . . with the multidistrict litigation," specifically including "[c]riminal and civil tools available *under the Controlled Substances Act*." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 161 at *7 (N.D. Ohio Mar. 1, 2018) (emphasis added) (attached as **Exhibit 2**).

(determining that the federal issue was substantial even though the underlying federal statute did not include a private right of action because it was "significant to the development of a uniform body of federal securities regulation"); *Wullschleger*, 953 F.3d at 522 (concluding that the federal issue was substantial and federal jurisdiction existed despite the absence of any federal private right of action); *Ranck v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4–5 (D. Or. May 2, 2017) (concluding that state-law claims based on violations of the Cable Communications Policy Act raised substantial federal questions and satisfied *Grable* even though no private right of action exists under the Act).

Plaintiffs also assert that claims premised only in part on violations of federal law do not raise substantial federal issues. Mot. to Remand at *16–17. But as explained above, *infra* at II.A, federal law is the only basis for Plaintiffs' claims against Supply Chain Defendants, making Plaintiffs' point immaterial here. *See NASDAQ OMX Grp., Inc.*, 770 F.3d at 1029 (concluding that a federal issue was substantial where "the duty on which the claims rest" arose solely from federal law); *Louisiana Flood*, 850 F.3d at 724 (determining that a federal issue was substantial where "[t]he dispute between the parties does not just concern whether Defendants breached duties created by federal law … [but] whether federal law creates such duties").

In sum, the federal issue here is important to the federal system as a whole because it will affect the DEA's enforcement of the CSA and approach for doing so and presents a question that will arise in numerous cases in which a plaintiff alleges that any distributor of pharmaceuticals breached its alleged duties to halt shipments of suspicious orders.

**D.   Resolving this case in federal court will not disrupt the federal-state balance.**

The federal issue is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts are *already* the exclusive fora for determining the permissible scope of restraints on distributors under the federal

CSA and for hearing challenges to DEA authority to enforce the federal CSA against distributors.[11] Similarly, federal courts have jurisdiction over proceedings seeking to enjoin violations of the CSA.  *See* 21 U.S.C. § 882(a) ("The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings … to enjoin violations of this subchapter.").  Litigating this case in a state court runs the risk of the state court applying federal requirements in tension or conflict with the way the federal agency tasked with enforcing the CSA—the DEA—applies them.  Thus, the questions presented in Plaintiffs' Complaint are precisely those over which federal courts already exercise jurisdiction.

## CONCLUSION

Walmart respectfully requests that this Court grant its Stay Motion.  *See* ECF Nos. 23–24. To the extent this Court considers Plaintiffs' Motion to Remand at this time, Walmart respectfully requests that this Court deny Plaintiffs' motion and exercise subject-matter jurisdiction over this matter.

DATED:  August 12, 2021

Respectfully submitted,

*/s/ James W. Carlson*
James W. Carlson
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
Facsimile: (412) 394-7959

---

[11] *See, e.g.*, *PDK Labs. Inc. v. U.S. DEA*, 362 F.3d 786 (D.C. Cir. 2004) (hearing challenge to DEA program enforcing CSA to prevent diversion of ephedrine); *Admin. Subpoena Walgreen Co. v. U.S. DEA*, 913 F. Supp. 2d 243 (E.D. Va. 2012) (resolving registrant's motion to require the DEA to return subpoenaed documents); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) (hearing challenge under Administrative Procedure Act to DEA order suspending registration of distribution facility).

Email: jamescarlson@jonesday.com

Christopher Lovrien*
Erin Burke*
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
Email: cjlovrien@jonesday.com
Email: eburke@jonesday.com

*denotes national counsel who will seek pro hac vice admission*

*Attorneys for Walmart Inc. and Wal-Mart Stores East, LP*

21