**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION**

ERIE COUNTY MEDICAL CENTER
CORPORATION, *et al.*,

    *Plaintiffs*,

  v.

TEVA PHARMACEUTICALS USA,
INC., *et al.*,

    *Defendants*.

Case No.: 1:21-cv-00826-WMS

**REPLY IN SUPPORT OF MOTION FOR
TEMPORARY STAY OF PROCEEDINGS PENDING ANTICIPATED
TRANSFER TO MULTIDISTRICT LITIGATION**

Plaintiffs' opposition to Walmart's Motion for a Temporary Stay of Proceedings Pending Anticipated Transfer to Multidistrict Litigation ("Stay Motion") ignores Second Circuit precedent and rehashes arguments that have been considered and rejected by judges in scores of opioid cases across the county when granting stays. ECF No. 1-6. Plaintiffs offer no basis for a different result here.

*First*, Plaintiffs disregard governing Second Circuit law that stays should be granted in cases like this one where the Judicial Panel on Multidistrict Litigation ("JPML") has entered a conditional transfer order ("CTO"), and the plaintiff has filed a motion to remand. "The Second Circuit Court of Appeals has adopted th[e] general rule" that courts should "defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case to the MDL panel." *North v. Merck & Co.*, 2005 WL 2921638, at *1, *3 (W.D.N.Y. Nov. 4, 2005) (marks omitted); ECF No. 24 at *2–4 (collecting cases). Jurisdictional issues "involv[ing] common questions of law and fact" arising in recurring cases are "particularly well-suited" to be "resolved by a single court." *In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990). The Second Circuit's directive is particularly applicable here because Plaintiffs do not contest that more than 170 cases have *already been transferred* to the Opiate MDL raising the *same jurisdictional issue*. ECF No. 1-6 (listing 173 cases transferred to the Opiate MDL on federal-question grounds with motions to remand pending). And there are multiple examples of courts staying or allowing opioid cases to transfer from this Circuit. *See, e.g.*, *Town of Poughkeepsie v. Teva Pharms. USA, Inc.*, No. 2:20-cv-02431 (E.D.N.Y. 2020) (transferred); *City of Rochester v. Purdue Pharma L.P.*, No. 6:19-cv-06490 (W.D.N.Y. 2019) (stayed and transferred) (stay order previously attached as ECF No. 25-2); *City of Ogdensburg v. Purdue Pharma L.P.*, No. 8:19-cv-00782 (N.D.N.Y. 2019) (stayed and transferred) (stay order previously attached as ECF No. 25-9); *City of Saratoga Springs v. Purdue*

*Pharma L.P.*, No. 1:19-cv-00789 (N.D.N.Y. 2019) (stayed and transferred) (stay order previously attached as ECF No. 25-10); *City of Auburn v. Purdue Pharma L.P.*, No. 2:19-cv-03800 (E.D.N.Y. 2019) (stayed and transferred) (stay order previously attached as ECF No. 25-11); *City of Amsterdam v. Purdue Pharma L.P.,* No. 1:19-cv-896 (N.D.N.Y. 2019) (stayed and transferred) (stay order previously cited at 2019 WL 5102564); *A.M.H. v. Purdue Pharma L.P.*, No. 1:18-cv-01018 (W.D.N.Y. 2018) (transferred).  Instead of grappling with this Circuit's "general rule," including as it has been applied in opioid cases, Plaintiffs ignore it and rely exclusively on cases from other circuits.  ECF No. 28-14 at *4–7.  Plaintiffs do not cite a single remand of an opioid case from a court in the Second Circuit, nor do they explain why Circuit practice should be ignored here.  To the contrary, it should be followed.

*Second*, even if this Court is inclined to depart from this Circuit's "general rule" and apply the test set forth in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001), a stay would still be appropriate.  Under the *Meyers* test, courts grant stays if, based on a "preliminary assessment," the "jurisdictional issue appears factually or legally difficult," the "jurisdictional issues have been raised in other cases … transferred to [an] MDL proceeding" previously, and considerations of "judicial economy" and "potential prejudice" favor a stay.  *Id.* at 1049.  Each is satisfied here, as numerous courts have concluded in substantively identical cases from across the country, including in hospital cases.  *See, e.g.*, *Paintsville Hosp. Co., LLC v. Amneal Pharms., LLC*, 2020 WL 7048275, at *3–5 (E.D. Ky. Dec. 1, 2020) (determining that "the jurisdictional analysis is both difficult and common" (citation and marks omitted)); *Dallas Cty. Hosp. Dist. v. Amneal Pharms., Inc.*, 2020 WL 429833, at *1–3 (S.D. Tex. Jan. 28, 2020) (concluding that the "jurisdictional issue" is "difficult[]"); *Marion Hosp. Corp. v. Abbott Labs.*, No. 1:20-cv-04111, Order at *1–3 (N.D. Ill. Aug. 25, 2020) ("[T]he Court's preliminary assessment of the motion to remand suggests the issues

2

implicated are not as straightforward as [p]laintiffs contend.") (previously attached as ECF No. 25-3); *Cty. of Jim Hogg v. Purdue Pharma L.P.*, No. 4:19-cv-02816, Order at *2–3 (S.D. Tex. Sept. 4, 2019) ("The pending motion to remand presents factually and legally difficult issues.") (previously attached as ECF No. 25-12).

Plaintiffs respond by baselessly contending that "a substantial majority of similarly situated courts, facing both motions to remand and contested motions to stay have elected to decide the motion to remand instead of deferring to the MDL Court." ECF No. 28-14 at *6. But Plaintiffs' cases are the minority. More than 80 opioid cases removed on federal-question jurisdiction have been stayed pending transfer. *Compare* ECF No. 28-14 at *6 n.5 (citing to 20 remanded cases), *with* ECF No. 1-6 (identifying 86 stay orders and another 87 cases that were allowed to transfer to the Opiate MDL). Plaintiffs' relatively smaller number of contrary citations merely emphasize the need for the uniformity that the Opiate MDL—and only the Opiate MDL—can provide. Indeed, examining just a handful of the districts from which Plaintiffs have cited remand orders, the inconsistent treatment of similar cases (and need for a single court to address these issues) is clear. For example, in the Eastern District of Virginia, Judge Payne remanded a case brought by Mecklenburg County in July of 2019. ECF 28-14 at *5 n.4, *6 n.5, *8 (citing *Mecklenburg Cnty. v. Purdue Pharma, L.P.*, 2019 WL 3207795 (E.D. Va. July 16, 2019)). But in April of 2020, Judge O'Grady of the same court granted a stay motion in a similar case brought by the City of Fairfax. *City of Fairfax v. Mallinckrodt PLC*, No. 1:20-cv-00218, Order at *5 (E.D. Va. Apr. 30, 2020) (previously attached as ECF No. 25-5). In the Northern District of Illinois, Judge Kennelly remanded a case brought by the Illinois Public Risk Fund in 2019. ECF 28-14 at *5 n.4, *6 n.5, *13–14 (citing *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, 2019 WL 3080929 (N.D. Ill. July 15, 2019)). Yet in 2020, Judge Alonso of the same court stayed a substantively identical case brought

3

by Marion Hospital.  *Marion Hosp. Corp.*, Order at *3 (previously attached as ECF No. 25-3).  Federal jurisdiction should not turn on the assigned judge.  That is precisely why courts in this Circuit generally do not apply the *Meyers* test and why even those courts in other Circuits that do apply it find transfer the more appropriate path for opioid cases.

*Third*, Walmart will be prejudiced if a stay is not granted.  Without a stay, Walmart will continue to be subjected to the risk of inconsistent rulings and unnecessary and duplicative proceedings in multiple courts.  *See, e.g.*, *City of Amsterdam v. Purdue Pharma L.P.*, 2019 WL 5102564, at *3 (N.D.N.Y. Oct. 11, 2019) (concluding that stay was necessary to protect defendants from engaging in duplicative litigation and reduce the possibility of inconsistent decisions).  Multiple courts have decided exactly that in virtually identical hospital cases across the country.  *See Paintsville Hosp. Co., LLC*, 2020 WL 7048275, at *4 ("[F]airness[] and consistency … weigh[ed] most heavily in favor of granting a stay in this case.  Given the fact that thousands of similar cases have been transferred already, and the likelihood of many more cases being in a similar procedural posture, the interests of judicial economy and the threat of inconsistent rulings outweigh[] any potential prejudice to the Plaintiffs in this case."); *Dallas Cty. Hosp. Dist.*, 2020 WL 429833, at *3 ("[T]he balance of factors weighs in favor of granting a stay" to protect defendants from "duplicative litigation and … inconsistent rulings."); *Takoma Regional Hospital, Inc. v. Purdue Pharma, L.P.*, No. 2:19-cv-157, Order at *1, *3–4, (E.D. Tenn. Oct. 4, 2019) (granting a stay to allow Judge Polster to "issue a uniform ruling on the matter, minimizing the risk of inconsistency") (previously attached as ECF No. 25-6); ECF No. 24 at *5.  Although this case is unlikely to move forward in the near-term even if remanded to state court (see below), the prejudice remains the same—Walmart and the other defendants should not have to separately litigate cases today or tomorrow that belong in the Opiate MDL.

4

Plaintiffs ask this Court to disregard the benefits of the Opiate MDL because some opioid cases are proceeding in state courts and because certain discovery may potentially be shared across cases. ECF No. 28-14 at *12–13. But Plaintiffs' all-or-nothing approach to coordination is unworkable in light of the ever-increasing numbers of opioid-related cases. The magnitude of this litigation necessitates continued efforts to coordinate proceedings in the Opiate MDL. A comparatively small number of cases brought in state court will remain there for various reasons, but that does not negate the benefits of consolidating as many actions as possible in the Opiate MDL. That is precisely why district courts have continued to enter stays pending transfer (*see e.g.*, *Harris Cty. Hosp. Dist. v. McKesson Corp.*, No. 4:21-CV-1450, Order (S.D. Tex. July 29, 2021)), and the JPML continues to transfer suitable cases like this one to the Opiate MDL. It is also a distraction to suggest that the possibility of sharing certain portions of productions across state and federal jurisdictions alleviates the burden of proceeding unnecessarily in multiple forums simultaneously. ECF No. 28-14 at *13. Much more goes into litigating these cases than simply sharing certain potentially overlapping documents; there are more than 3,000 actions in the Opiate MDL for a reason.

*Fourth*, Plaintiffs do not (and cannot) identify any meaningful prejudice that they would suffer as the result of a stay pending the JPML's transfer decision. This Court's stay would last a matter of weeks. The JPML will finalize its decision in a timely fashion, likely at its next hearing at the end of September. ECF No. 24 at *9. Instead, Plaintiffs' prejudice argument is in fact a complaint about Judge Polster's case-management procedures in the Opiate MDL. That issue is not before this Court and has been rejected multiple times for that reason. *See Cty. of Alameda v. Purdue Pharma L.P.*, No. 3:19-cv-02307, Order at *4–5 n.3 (N.D. Cal. June 10, 2019) ("[T]his Court is not the appropriate forum for second-guessing Judge Polster's case management.")

5

(previously attached as ECF No. 25-8); ECF No. 24 at *10 (collecting cases).  Regardless, even if Plaintiffs' complaints about Judge Polster were relevant to the decision before this Court, they still would fail on the merits.  Plaintiffs' prejudice argument depends on its speculative assumption that its case would immediately move forward if remanded to New York state court.  ECF No. 28-14 at *14–15.  The opposite is far more likely.  If returned to state court, Plaintiffs' case will almost certainly be transferred to the coordinated state court proceedings in Suffolk County.  ECF No. 1-4 at *135 (noting that "the New York Litigation Coordinating Panel has ordered that all opioid product liability cases be heard in Suffolk County in a coordinated litigation").  That coordinated opioid proceeding is using a bellwether approach.  The first set of bellwethers has advanced through discovery and is currently in trial.  All of the other cases are stayed and have been stayed for years.  Plaintiffs' case would be stayed too.  Having waited nearly four years after the Opiate MDL and the New York state coordinated proceedings were established in 2017 to file this case, it is hardly surprising that Plaintiffs will have to wait their turn.  Plaintiffs will not be prejudiced by the appropriate adjudication of the federal-question jurisdictional issues in the Opiate MDL in the interim.

*          *          *

The JPML has already issued a CTO for this case, and Walmart anticipates the JPML will finalize that order shortly after one of its upcoming hearings.  This case will then join more than 3,000 substantially similar opioid actions, including more than 170 cases that were removed and transferred on an identical basis.  ECF No. 1-6.  These jurisdictional issues should be decided in the Opiate MDL.  Walmart respectfully requests that this Court stay all proceedings in this case and defer consideration of Plaintiffs' Motion to Remand pending a final decision by the JPML on whether to transfer this case to the Opiate MDL.

DATED:  August 19, 2021	Respectfully submitted,

/s/ *James W. Carlson*
James W. Carlson
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
Email: jamescarlson@jonesday.com

Christopher Lovrien*
Erin Burke*
JONES DAY
555 S. Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
Email: cjlovrien@jonesday.com
Email: eburke@jonesday.com

*denotes national counsel who will seek pro hac vice admission*

*Attorneys for Walmart Inc. and Wal-Mart Stores East, LP*

## CERTIFICATE OF SERVICE

I, James W. Carlson, hereby certify that on August 19, 2021, I electronically filed a Reply in Support of Motion for Temporary Stay of Proceedings Pending Anticipated Transfer to Multidistrict Litigation with the Clerk's Office using the CM/ECF system, which will send electronic notice to all counsel of record.

DATED:  August 19, 2021

*/s/ James W. Carlson*
James W. Carlson
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
Email: jamescarlson@jonesday.com